A. D. Saenger, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Abraham D. Saenger, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Saengers, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 85631, 88079, 88080. Promulgated December 6, 1938.

*S. L. Herold, Esq.*, for the petitioners.
*R. P. Hertzog, Esq.*, for the respondent.

1298

OPINION.

BLACK: In view of the respondent's concession in his brief that, due to the fact that Saengers, Inc., purchased all of the remaining assets of the Saenger Corporation at the sheriff's sale for a full and adequate consideration, "there is no basis for holding Saengers Inc. liable for any portion of the deficiencies involved", we need not discuss the errors assigned in that proceeding. The respondent's determination in Docket No. 88080 is accordingly reversed.

In Docket No. 85631 petitioner A. D. Saenger contends that he is not liable as a transferee for any part of the $65,808.05 deficiency finally determined against A. D. Saenger, Inc., and that the Board should so decide.

In Docket No. 88079 petitioner Abraham D. Saenger (same person as A. D. Saenger) concedes that he is liable as a transferee for any deficiency that may finally be determined against A. and J., Inc., for the year 1931, but only to the extent, however, of the $54,047.57 transferred to him without consideration by the newly consolidated company, the Saenger Corporation, on January 4, 1934.

Although the respondent in Docket No. 85631 determined that petitioner was liable as transferee for a deficiency determined against A. D. Saenger, Inc., in the amount of $65,808.05, and although the respondent in Docket No. 88079 determined that petitioner was liable as transferee for a deficiency determined against A. and J., Inc., in the amount of $161,346.17, or a total transferee liability against petitioner of $227,154.22 for deficiencies determined against A. D. Saenger, Inc., and A. and J., Inc., the respondent in his brief now merely contends that in view of the fact that A. D. Saenger has only received assets having a net value of $54,047.57, "it is evident that A. D. Saenger should be held liable for the deficiencies of A. & J. Inc., and A. D. Saenger, Inc., to the extent of said sum of $54,047.57 and respondent requests the Board to so hold."

It is therefore apparent that the only remaining difference between the parties involved in these proceedings is whether petitioner A. D. Saenger is liable as a transferee for any part of the $65,808.05 deficiency finally determined against A. D. Saenger, Inc. Since the petitioner in Docket No. 88079 concedes that he is liable for any deficiency that may finally be determined against A. and J., Inc., to the extent of $54,047.57, and since the respondent concedes that he is not entitled to collect any more than $54,047.57 on account of the total deficiencies of $227,154.22 determined against A. D. Saenger, Inc., and A. and J., Inc., the question of whether A. D. Saenger is liable as a transferee for any part of the $65,808.05 deficiency finally determined against A. D. Saenger, Inc., would be a moot question except for the fact that the deficiency of $161,346.17 against A. and J., Inc., for the year 1931 determined by the respondent and approved by this Board has not yet become final. On the other hand, if A. D. Saenger is liable as a transferee to the extent of $54,047.57 on account of the deficiency of $65,808.05 finally determined against A. D. Saenger, Inc., the question of the correctness of our decision in the proceedings of A. and J., Inc., Docket No. 80815 would likewise become moot for the reason that the respondent concedes that he is not entitled to collect any more than $54,047.57 on account of

the total deficiencies he has determined against A. D. Saenger, Inc., and A. and J., Inc., for the years 1929 and 1931, respectively.

The respondent in Docket No. 85631 determined that A. D. Saenger was liable to the extent of $65,808.05, plus interest, as a transferee of assets of A. D. Saenger, Inc. This determination was grounded upon the transfer of all of the assets of A. D. Saenger, Inc., to the Saenger Corporation on August 16, 1932, and a simultaneous receipt by petitioner of all of the capital stock, except qualifying shares, of the Saenger Corporation, thus leaving A. D. Saenger, Inc., without any assets to pay its $65,808.05 liability for taxes due the United States. In making this determination the respondent was evidently relying upon such cases as *Woodley Petroleum Co.*, 16 B. T. A. 253, 263; *E. H. Dobrin*, 27 B. T. A. 611; and *Homer S. Warren et al.*, *Administrators*, 31 B. T. A. 1041. But regardless of the basis for the respondent's determination he now contends that A. D. Saenger is liable in Docket No. 85631 as well as in Docket No. 88079 as a transferee of property of Saenger Corporation to the extent of the $54,047.57 received by him from that corporation without consideration on January 4, 1934, and apparently he relies upon no other ground.

As far as Docket No. 85631 is concerned, petitioner has limited his discussion in his brief to the contention that he did not become liable as a transferee of property of A. D. Saenger, Inc., by reason of the consolidation which took place on August 16, 1932. He argues this point in his brief as follows:

The documentary evidence shows that on August 16, 1932, the three corporations were consolidated. At that date A. D. Saenger, the present petitioner, owned all the stock of A. D. Saenger, Inc., and of J. H. Saenger, Inc. As a result of the merger, [*sic*] he owned all of the stock of the consolidated corporation, which was given the name and style of Saenger Corporation. No assets whatever were transferred to him in this reorganization. He owned all of the stock in A. D. Saenger, Inc., and J. H. Saenger, Inc., respectively. These two corporations owned all of the stock of A. & J. Inc. The result of the consolidation was that A. D. Saenger then owned all of the stock of Saenger Corporation, which was nothing but A. & J. Inc., with a new name. He received no assets of any kind or character; he was in no different position, so far as respected assets, from that which he occupied at the moment prior to the reorganization. He simply changed his position from that of a stockholder in the holding company to a stockholder in the operating company. By the simplification of the corporate structure he simply put himself one step nearer immediate and direct ownership. In no sense could it be said that he was a transferee.

The consolidation in question was consummated under the provisions of sections 47 to 51, inclusive, of Act 250 of the Legislature of Louisiana of 1928 (secs. 1127 to 1131, inclusive, ch. I, title XIV, Dart's Louisiana General Statutes, 1932), the material parts of which

we have set out in the margin.[1] These provisions of the law of Louisiana relating to the consolidation of existing corporations are substantially the same as sections 7 to 11, inclusive, of the Business Corporation Law of the State of New York. Book 6, McKinney's Consolidated Laws of New York. Section 11[2] of the New York law, just as section 1131 V of the Louisiana law, provides that "such new

---

[1] 1127. MERGER AND CONSOLIDATION.

I. Any two or more domestic corporations formed for the purpose of carrying on the same or similar business  *  *  *  may be

(a) merged into one of such domestic corporations, or

(b) consolidated into a new corporation to be formed under this act  *  *  *.

1128. MERGER OR CONSOLIDATION—JOINT AGREEMENT. The merger or consolidation of corporations can be effected only as a result of a joint agreement entered into and filed as follows  *  *  *  [not necessary to set out in detail here].

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

1131. EFFECT OF MERGER OR CONSOLIDATION. Upon the consummation of the merger or consolidation as provided in the last preceding section, the effect of such merger or consolidation shall be that:

I. The several parties to the joint agreement shall be one corporation, which shall be

(a) in the case of merger, that one of the constituent corporations into which it has been agreed the others shall be merged and which shall survive the merger for that purpose, or

(b) in the case of consolidation, the new corporation into which it has been agreed the others shall be consolidated;

II. The separate existence of the constituent corporations shall cease, except that of the surviving corporation in the case of merger.

III. The surviving or new corporation, as the case may be, shall possess all the rights, privileges and franchises possessed by each of the former corporations so merged or consolidated except that such surviving or new corporation shall not thereby acquire authority to engage in any business or exercise any right which a corporation may not be formed under this act to engage in or exercise.

IV. All of the property of whatsoever kind or description of each of the constituent corporations, and all debts due on whatever account to any of them, including subscriptions for shares and other choses in action belonging to any of them shall be taken and be deemed to be transferred to and invested in such surviving or new corporation, as the case may be, without further act or deed.

V. The surviving or new corporation shall be responsible for all the liabilities and obligations of each of the corporations merged or consolidated, in the same manner as if such surviving or new corporation had itself incurred such liabilities or obligations; but the liabilities of such constituent corporations or of their shareholders, directors or officers shall not be affected, nor shall the rights of the creditors thereof or of any persons dealing with such corporations be impaired by such merger or consolidation, and any claim existing or action or proceeding pending by or against any of such constituent corporations may be prosecuted to judgment as if such merger or consolidation had not taken place, or the surviving or new corporation may be proceeded against or substituted in its place. [Acts 1928, No. 250, §51.]

[2] 11. *Rights of creditors of old corporations.*—The rights of creditors of any corporation that shall be so consolidated shall not in any manner be impaired, nor any liability or obligation for the payment of any money due or to become due to any person or persons, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof be released or impaired by any such consolidation; but such new corporation shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages and the stockholders of the respective corporations consolidated shall continue, subject to all the liabilities, claims and demands existing against them as such, at or before the consolidation; and no action or proceeding then pending before any court or tribunal in which any corporation that may be so consolidated is a party, or in which any such stockholder is a party, shall abate or be discontinued by reason of such consolidation, but may be prosecuted to final judgment, as though no consolidation had been entered into; or such new corporation may be substituted as a party in place of any corporation so consolidated, by order of the court in which such action or proceeding may be pending.

corporation shall succeed to and be liable to pay and discharge all such debts and liabilities of each of the corporations consolidated *in the same manner as if such new corporation had itself incurred the obligation or liability* * * *."* (Italics supplied.) In *Oswego Falls Corporation*, 26 B. T. A. 60; affd., 71 Fed. (2d) 673, we considered the effect of section 11 of the New York law and held that the newly organized consolidated corporation was directly and primarily liable for the deficiencies in tax, if any, of its components as *taxpayer*, and that it was not secondarily liable as a transferee of the assets of its consolidating corporations. Cf. *United States* v. *Oswego Falls Corporation* (Not reported.) ; *Bowman Hotel Corporation*, 24 B. T. A. 1193. We think the same principles are applicable in the instant proceedings and that under section 1131 V of the Louisiana law, the Saenger Corporation became directly and primarily liable as a *taxpayer* rather than as a transferee for the deficiency of $65,-808.05 determined against A. D. Saenger, Inc., as well as for the deficiency of $161,346.17 determined against A. and J., Inc.

On January 4, 1934, the Saenger Corporation still owed the United States $223,404.22, exclusive of interest, on account of the two deficiencies determined against two of its consolidating corporations. Without paying any part of this liability, it distributed to petitioner A. D. Saenger without consideration assets having a net value of $54,047.57. At that time the balance of its assets, with the possible exception of $23,012.21, was in the official possession of the sheriff of Caddo Parish, who had seized them to satisfy a judgment obtained against the Saenger Corporation for $64,271.33. On January 10, 1934, the Saenger Corporation transferred the remaining assets of $23,012.21 to the Saranac Investment Corporation, all the stock of which was in the official possession of the sheriff on January 4, 1934, when the $54,047.57 was transferred to petitioner. The assets in the possession of the sheriff were sold on January 17, 1934, for an amount insufficient to satisfy the judgment and the existing mortgages. Thereafter the Saenger Corporation was without any assets. Upon these facts petitioner A. D. Saenger concedes that he is liable as a transferee of assets of the Saenger Corporation to the extent of $54,-047.57, providing it is finally determined that the $161,346.17 deficiency against A. and J., Inc., is correct. It is our opinion, however, and we hold accordingly, that the petitioner A. D. Saenger is liable as a transferee of assets of the Saenger Corporation to the extent of $54,047.57 *in any event* for the reason that, as expressed above, the Saenger Corporation became directly and primarily liable as a taxpayer for the full deficiency of $65,808.05 that has been finally determined against A. D. Saenger, Inc., as well as for the full deficiency of $161,346.17 which we have recently approved against

A. and J., Inc. The Saenger Corporation's liability for each of these deficiencies is primary and not secondary. Cf. *Oswego Falls Corporation, supra.*

In Docket No. 85631 the respondent is entitled to a decision holding petitioner liable as a transferee of assets of the Saenger Corporation to the extent of $54,047.57 plus interest thereon provided by law from January 4, 1934, with the provision, however, that, if and when petitioner pays any part of the liability of $54,047.57 in Docket No. 88079, the liability in Docket No. 85631 will be reduced *pro tanto.* Cf. *Henry Cappellini,* 16 B. T. A. 802. In Docket No. 88079 the respondent is entitled to a decision holding petitioner liable as a transferee of assets of the Saenger Corporation to the extent of $54,047.57, plus interest thereon provided by law from January 4, 1934, with the provision, however, that, if and when petitioner pays any part of the liability of $54,047.57 in Docket No. 85631, the liability in Docket No. 88079 will be reduced *pro tanto.* In Docket No. 88080 there is no transferee liability.

> *In Docket No. 88080 decision will be entered that there is no liability as transferee. In Docket Nos. 85631 and 88079 decision will be entered as directed in the last paragraph of the foregoing opinion.*