ESTATE OF SAMUEL STEIN, DECEASED, LAZARUS I. LEVINE AND NORMAN L. MARKS, EXECUTORS, AS ALLEGED TRANSFEREE OF ESTATE OF ESTHER M. STEIN, DECEASED, AS ALLEGED TRANSFEREE OF NATIONAL THREAD CO., INC., TRANSFEROR, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 69931, 69932, 70277, 78991. Filed May 14, 1963

*Joseph Getz*, for the petitioners.
*Charles Casazza*, for the respondent.

### OPINION

FORRESTER, *Judge:* The present proceedings in these consolidated cases are pursuant to Rule 50 and involve petitioners' objections to the proposed computations for entry of decision filed herein by respondent, and certain proposed alternative computations filed by petitioners.

The issues which were decided in these cases involved questions as to the existence of certain transferee liabilities which had been determined, and the amounts thereof. Our Findings of Fact and Opinion

---

[1] Proceedings of the following petitioners are consolidated herewith: Estate of Samuel Stein, Deceased, Lazarus I. Levine and Norman L. Marks, Executors, as Alleged Transferee of National Thread Co., Inc., Transferor, Docket No. 69932; Estate of Samuel Stein, Deceased, Lazarus I. Levine and Norman L. Marks, Executors, as Alleged Transferee of Estate of Esther M. Stein, Deceased, Transferor, Docket No. 70277; and Estate of Samuel Stein, Deceased, Lazarus I. Levine and Norman L. Marks, Executors, as Alleged Transferee of Estate of Esther M. Stein, Deceased, Transferor, Docket No. 78991.

are reported at 37 T.C. 945. We found transferee liability to exist in each case and ordered decisions entered under Rule 50.

Pursuant thereto respondent filed computations for entry of decision in each docket number, petitioners filed objections accompanied by alternative computations in Docket Nos. 69931 and 69932, and hearing was held.

### Docket Nos. 69931 and 69932

Docket No. 69931 involves the liability of petitioner as transferee of the Estate of Esther M. Stein as transferee of National Thread Co., Inc. (hereinafter referred to as NTC), for unpaid deficiencies of said corporation; Docket No. 69932 involves the liability of petitioner as transferee of NTC for the same unpaid deficiencies of said corporation. In 37 T.C. 945, we found such liabilities to exist.

Petitioner has raised one objection to respondent's computation in Docket No. 69931 and three objections to respondent's computation in Docket No. 69932, one of the objections in the latter case being identical to the sole objection in the former.

1. Petitioners object in both docket numbers to the fact that respondent's computations allow no credit under section 1341(b)(1) of the Code.[2] The relevant provisions of section 1341 [3] provide an income tax adjustment for the taxpayer who has included an item in gross income for tax purposes and who subsequently discovers that he did not have an unrestricted right to such item. The appropriateness of such relief provisions is exemplified by the facts involved in Docket No. 69932, wherein it has been determined that the Commissioner is entitled to recover from the estate of an individual the full

---

[2] All statutory references are to the Internal Revenue Code of 1954.

[3] SEC. 1341. COMPUTATION OF TAX WHERE TAXPAYER RESTORES SUBSTANTIAL AMOUNT HELD UNDER CLAIM OF RIGHT.

　(a) GENERAL RULE.—If—

　　(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

　　(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

　　(3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

　　(4) the tax for the taxable year computed with such deduction; or

　　(5) an amount equal to—

　　　(A) the tax for the taxable year computed without such deduction, minus

　　　(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

For purposes of paragraph (5)(B), the corresponding provisions of the Internal Revenue Code of 1939 shall be chapter 1 of such code (other than subchapter E, relating to self-employment income) and subchapter E of chapter 2 of such code.

　(b) SPECIAL RULES.—

　　(1) If the decrease in tax ascertained under subsection (a)(5)(B) exceeds the tax imposed by this chapter for the taxable year (computed without the deduction) such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year, and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year.

amount of certain dividend payments made to him by a corporation, the recovery to be applied against the unpaid tax liabilities of the corporation, and where the individual had paid income taxes in respect of his receipt of those dividends under the supposition that his right to retain them was not open to challenge.

We do not have jurisdiction in these cases, however, to determine what relief section 1341 may afford petitioners as a result of the facts before us, for the dual reasons that this objection involves both years and a taxpayer or taxpayers not before us.

The deduction or credit provided for by section 1341 is applicable, by that section's terms, to that taxable year in which occurs the restoration to another of an item previously included in gross income. We are here concerned with petitioners' liabilities as transferees for the unpaid taxes, plus additions thereto, of NTC for the years 1943, 1944, and 1945. Any restoration of transferred assets resulting from the establishment of such liabilities in these cases must of necessity occur after the years before us. We must consequently decline to consider this objection, for section 6214(b) provides that we "shall have no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid."

Furthermore, in a case involving transferee liability we are concerned with the secondary liabiilty of a transferee for the taxes of another, and we lack jurisdiction to consider the personal tax status of the transferee with regard to his own primary liability as a taxpayer for any year, unless an asserted deficiency in such personal taxes is also properly before us. *J. V. Vandenberge*, 3 T.C. 321 (1944), affd. 147 F. 2d 167 (C.A. 5, 1945), certiorari denied 325 U.S. 875 (1945). The liabilities of individuals as transferees are distinct from their liabilities as taxpayers. See *Estate of John T. Eversole*, 39 T.C. 1113 (1963). The cases before us present only the question of petitioners' liabilities as transferees.[4]

---

[4] Since we lack jurisdiction to consider this objection herein, we need not decide whether petitioner indicates a misunderstanding of section 1341 by raising this objection in Docket No. 69931. In that case we held petitioner liable for the unpaid taxes and additions thereto of NTC, as a result of the payment of dividends by NTC to Esther M. Stein and the subsequent distribution on August 21, 1946, to petitioner's decedent, as the residual beneficiary of Esther's estate, of the sum of $74,880.91. (37 T.C. 948.) It has not been shown that either petitioner or petitioner's decedent included any amount in gross income in respect of the receipt of this distribution. Unfortunately, neither Esther nor her estate has paid the income taxes due in respect of her receipt of the aforementioned dividends from NTC; but petitioner's liabilities as transferee of her estate for those income taxes is the subject matter of Docket Nos. 70277 and 78991 herein, and we have found such liabilities to exist. Taken together, the facts in Docket Nos. 69931, 70277, and 78991 thus raise a fascinating question of what relief, of the type afforded by section 1341, may become available in this complex situation, and to whom such relief may become available. But the addition of Docket Nos. 70277 and 78991 to our consideration of the objection of petitioner to respondent's computation in Docket No. 69931 does not give us the jurisdiction to consider this matter which we have found we otherwise lack.

Thus it was a matter of our jurisdiction of which we spoke, as reported at 37 T.C. 958, when we said that "The question of what relief may be afforded petitioner under section 1341(b)(1) is not before us in this case."

2. Petitioner objects in Docket No. 69932 that respondent has failed to give credit or to account for certain accounts receivable of NTC, the only transferor in this case, which were seized on May 9, 1957, on which date the district director of internal revenue for the district of Lower Manhattan levied against the assets of the transferor for nonpayment of the taxes and additions thereto involved herein. Petitioner contends that accounts receivable in the face amount of $19,231.23 were seized by respondent under said levy, that respondent assumed the responsibility for the collection thereof, that the accounts became the property of respondent, that neither petitioner nor the transferor thereafter had any right to the collection of the same nor to see that the same were collected and that payments thereon were credited to the transferor's account in respect of its unpaid deficiencies, that respondent has failed to give credit for $12,986.43 of the accounts seized, that respondent has given no explanation for the large proportion of the accounts remaining uncollected or uncredited to the transferor at this late date, and that the full amount of the seized accounts receivable should be credited to the transferor's account in respect of its unpaid deficiencies under these Rule 50 proceedings, or in the alternative that petitioner should be given the opportunity to show in these proceedings that the transferor's account should be credited with a larger amount in respect of the seized receivables than the amount for which credit has been given.

The concept of this Court considering the diligence of the Commissioner in realizing upon assets seized from a delinquent taxpayer is novel. It may be that we have jurisdiction in a transferee liability case to determine, in an appropriate manner and at an appropriate time, the amount remaining unpaid of the taxes of a transferor for which the Commissioner seeks to hold a transferee liable. In transferee cases where it is shown that the full amount of the deficiency of the transferor has been paid, we hold that the liability of the transferee is extinguished.[5] See *Sara E. Carpenter*, 16 B.T.A. 98 (1929); *J. P. Quirk*, 15 T.C. 709 (1950), affd. 196 F. 2d 1022 (C.A. 5, 1952). Similarly, where it is shown that a part of the transferor's deficiency has been paid without protest, the amount that can be collected from a petitioning transferee is reduced accordingly. *J. Warren Leach*, 21 T.C. 70, 79 (1953); see also *A. D. Saenger*, 38 B.T.A. 1295 (1938).

---

[5] This is to be distinguished from those cases in which a deficiency has been asserted against a taxpayer and paid in full. In such cases the Court has said that it lacks *jurisdiction* to redetermine the deficiency. See *Everett Knitting Works*, 1 B.T.A. 5 (1924).

In this case we had before us the issue of the remaining unpaid amount of the transferor's taxes and additions thereto. This necessarily included the question of the amount paid in respect of the seized accounts receivable. Burden of proof as to this question was at all times petitioner's, by virtue of section 6902(a).[6][7]

This case was submitted to us solely upon a stipulation of facts filed by the parties. With regard to this matter the stipulation reads:

Of the various deficiencies determined against NTC, the following amounts, without considering interest as provided by law, remain unpaid as per the records of the District Director of Mahattan:

| Year | Excess profits tax | Additions to excess profits tax for fraud |
| --- | --- | --- |
| 1943 | $32,636.57 | $18,186.55 |
| 1944 | 25,985.95 | 13,389.99 |
| 1945 | 17,251,82 | 18,176.95 |
| Totals | 75,874.34 | 49,753.49 |

There was no showing or attempted showing prior to the filing of our report (37 T.C. 945) that the unpaid balance of the transferor's liability was other than as indicated by the records of the district director;[8] consequently we held, as reported at 37 T.C. 959, that said remaining liability was $125,627.83 (exclusive of interest).[9]

We are thus faced with the question of whether we may consider petitioner's objection in these proceedings under Rule 50. It is clear that we may not.

---

[6] SEC. 6902. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES.

(a) BURDEN OF PROOF.—In proceedings before the Tax Court the burden of proof shall be upon the Secretary or his delegate to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

[7] Petitioner has not contended, in its petition or elsewhere, that the full deficiency of the transferor (NTC) has been paid or that crediting NTC in full with the face amount of the seized receivables would result in full payment of the transferor's deficiencies. Indeed, such contentions could not be supported by the record. We are therefore not presented in this case with the interesting possibility that the determinant of where the burden of proof lay on the question of the amount of NTC's taxes paid by virtue of the seizure of the accounts receivable might have depended on the amount deemed (as a result of such proof) to have been paid. This Court has indicated that, at least where there is evidence that the full amount of a transferor's deficiency has been paid, a predecessor of section 6902(a) places on the Commissioner the burden of proving that there remains some portion thereof which has not been paid. See *Wayne Body Corporation,* 22 B.T.A. 401, 413 *et seq.* (1931).

[8] It was thus not necessary for us to determine the proper method of deciding the exact amount to be considered paid by transferor as a result of the seizure of the accounts receivable, i.e., whether the determination should be as to their fair market value at the time of seizure or as to the diligence of the Commissioner in collecting them (as petitioner now seems to contend); whether they were being collected for the Commissioner or in effect by the Commissioner on account for the taxpayer; or whether they should have been sold by the Commissioner pursuant to section 6335 and, if so, the consequences of the apparent lack of such sale.

[9] Respondent now admits in his computations that the unpaid balance of transferor's taxes and additions thereto has been reduced to $116,356.71 (exclusive of interest).

Rule 50(c) provides:

(c) *Limits on argument under this Rule.*—Any argument under this Rule will be confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the report already made, and no argument will be heard upon or consideration given to the issues or matters already disposed of by such report or of any new issues. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration.

Rule 50 is a valid exercise of the Court's power to regulate practice in the proceedings before it. *Bankers Coal Co.* v. *Burnet*, 287 U.S. 308 (1932). Regardless of whether petitioner's objection is viewed as a new issue or as a matter already disposed of in our report by virtue of the rules of burden of proof, we may not consider it here. *Commissioner* v. *Sussman*, 102 F. 2d 919 (C.A. 2, 1939) ; *Great Northern Railway Co.*, 10 B.T.A. 1347, 1356 (1928).

3. Petitioner's last objection to the computation filed by respondent in Docket No. 69932 is that this transferee cannot be liable for those liabilities of the transferor which accrued in years prior to the year in which the transferee became a stockholder of the transferor. This issue was not raised by petitioner prior to these proceedings, and as a new issue it could not be considered by us even if it were correct. *Commissioner* v. *Sussman, supra.*

Accordingly, petitioners' objections to the computations filed by respondent in Docket Nos. 69931 and 69932 are overruled.

As reported, we have held that petitioners are liable in Docket Nos. 69931 and 69932 on account of the unpaid taxes and additions thereto of NTC, in the total amount of $131,146.57 (excluding interest). We found that the amount of NTC's unpaid deficiencies had been reduced to $125,627.83 (excluding interest), and said at page 959 of our prior report that proper adjustment of the remaining liability for the deficiencies of NTC, as between Docket Nos. 69931 and 69932, would be made in the Rule 50 computation.

Respondent, in his computations filed under Rule 50 in these two docket numbers, has admitted that the total of NTC's unpaid taxes and additions thereto has been further reduced to $116,356.71 (excluding interest) ; however, respondent's computations in these two cases contain no adjustments in the nature of that referred to at 37 T.C. 959.

Respondent seeks decisions in the total amount of $131,146.57 plus interest at the per annum rate of 6 percent, the rate determined by us to be appropriate, on the various amounts comprising that total from the respective dates on which we found such amounts to have been transferred to petitioners' decedent.[10]

Petitioners have not objected to this aspect of respondent's computations in these two docket numbers.

---

[10] In Docket No. 69931 respondent requests decision in the amount of $15,979.16, plus interest thereon from August 21, 1946. In Docket No. 69932 respondent requests decision in the amount of $115,167.41, plus interest on $35,673.54 from June 30, 1944 ; on $76,208.03 from June 30, 1945 ; and on $3,285.84 from June 30, 1946.

We have calculated the amount of the unpaid liability of NTC for taxes and the additions thereto, including interest to date, and have found this to be in excess of the total amount, including interest to date, for which respondent has asked decision in these two docket numbers. We therefore find that respondent's Rule 50 computations in these cases are proper, and we hold that decision should be entered in accordance with the computations filed by respondent in Docket Nos. 69931 and 69932.

### *Docket Nos. 70277 and 78991*

These docket numbers involve the liabilities of petitioner as transferee of the estate of Esther M. Stein for certain unpaid deficiencies in income taxes and additions thereto determined against said estate. We found such liabilities to exist.

No objections to respondent's computations, and no alternative computations, were filed by petitioner in these cases prior to the hearing under Rule 50. In such a circumstance we are authorized by Rule 50(b)[11] to enter our decision in accordance with the computations filed by respondent.

At the hearing under Rule 50, petitioner stated that there was no objection to respondent's computations in these two cases. A ruling on a motion for judgment in these docket numbers was reserved by us in order that briefs might be filed and that any bearing upon the proper resolution of these cases that might be implicit in the decisions to be entered in Docket Nos. 69931 and 69932 might be considered herein.

In the brief filed by petitioner under these Rule 50 proceedings, petitioner has for the first time raised an objection to the computations filed by respondent in these two cases. The objection is unrelated to the computations made in Docket Nos. 69931 and 69932. Petitioner's contention is that interest should be computed in Docket Nos. 70277 and 78991 from the date of respondent's demand on the transferee for payment rather than from the date of the transferee's receipt of the assets giving rise to his transferee liability. The contention is that the transfers involve, at most, constructive fraud as opposed to actual fraud.

---

[11] (b) *Procedure in absence of agreement.*—If, however, the parties are not in agreement as to the amount of the deficiency or overpayment to be entered as the decision, in accordance with the report of the Court, either of them may file with the Court a computation of the deficiency or overpayment believed by him to be in accordance with the report of the Court. The Clerk will serve a copy thereof upon the opposite party, will place the matter upon a motion calendar for argument in due course, and will serve notice of the argument upon both parties. If the opposite party fails to file objection, accompanied by an alternative computation, at least 5 days prior to the date of such argument, or any continuance thereof, the Court may enter decision in accordance with the computation already submitted. If in accordance with this Rule computations are submitted by the parties which differ as to the amount to be entered as the decision of the Court, the parties will be afforded an opportunity to be heard in argument thereon on the date fixed, and the Court will determine the correct deficiency or overpayment and enter its decision.

This issue has already been disposed of by us. As reported at 37 T.C. 956, we found actual fraud to exist in all docket numbers and ordered, as reported at 37 T.C. 962, that interest run from the date of transfer in each.

Consequently, respondent's motion that decision be entered according to the computations filed by him in Docket Nos. 70277 and 78991 is hereby granted.

> *Decisions will be entered in all docket numbers in accordance with the computations filed by respondent.*