VIRGINIA Z. HARWOOD, ET AL.,[1] PETITIONERS V.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6557–81—6561–81.    Filed November 7, 1984.

*Edward B. Simpson* and *John H. Convery*, for the petition-
ers.
*Richard G. Goldman*, for the respondent.

OPINION

CANTREL, *Special Trial Judge*: These consolidated cases
were called from the calendar for the motions session of the
Court at Washington, D.C., on October 10, 1984, for hearing on
respondent's computation for entry of decision. Counsel for the
parties appeared and presented argument.[2]

On February 8, 1984, the Court filed its opinion (82 T.C. 239)
in these cases holding that transactions among the petitioners
shifting their respective holdings in the family partnership
were taxable gifts to the extent the value of the property
transferred exceeded the consideration received therefor; de-
termining the value of a restrictive clause in the partnership
agreements and the value of gifts of partnership interests; and
ruling that the family trusts' savings clauses did not affect the
amount of determined gift taxes. The Court directed that

[1] Other petitioners whose cases have been consolidated with the present case are: Belva Y.
Harwood, docket No. 6558–81; Morris J. Harwood, docket No. 6559–81; Margaret P. Harwood,
docket No. 6560–81; and Arthur H. Harwood, docket No. 6561–81.
[2] These cases were assigned pursuant to Delegation Order No. 8 of this Court, 81 T.C. XXV (1983).

decisions be entered under Rule 155,[3] in part because petitioner Virginia Z. Harwood's wages in 1977 were less than asserted in the notice of deficiency for that year.

Thereafter, on June 21, 1984, respondent filed his computations for entry of decision in compliance with the Court's opinion which reflected the following deficiencies:

| Docket No. | Petitioner | For calendar quarters ending | Deficiency |
|---|---|---|---|
| 6557–81 | Virginia Z. Harwood | Mar. 31, 1973 | $5,104 |
| | | Dec. 31, 1976 | 77,350 |
| 6558–81 | Belva Y. Harwood | Mar. 31, 1973 | 2,158 |
| 6559–81 | Morris J. Harwood | Mar. 31, 1973 | 15,803 |
| | | Dec. 31, 1976 | 78,615 |
| 6560–81 | Margaret P. Harwood | Dec. 31, 1976 | 69,758 |
| 6561–81 | Arthur H. Harwood | Mar. 31, 1973 | 5,104 |
| | | Dec. 31, 1976 | 77,350 |

Petitioners then filed a notice of objection and request for hearing on July 17, 1984, in which they stated they intend to appeal these cases and sought to raise an issue relative to submitting a bond on appeal.[4] Pursuant to an order of this Court dated July 23, 1984, petitioners filed a memorandum in support of objection to entry of decision on August 23, 1984, in which they assert that they are unable to obtain a bond from an approved surety, that they applied to the Commissioner's representatives to accept first deeds of trust made out to respondent on properties they own or control; that section 7485(a)(2)[5] allows an alternate type of bond from section 7485(a)(1) for bonding an appeal; and that if the issue of a proper bond is not settled prior to entry of decisions, petitioners face assessment and collection on the adjudicated deficiency amounts.[6] Respondent filed no reply to this memorandum.

The issues that this case presents are issues of first impression. Because we determine that a Rule 155 proceeding may

---

[3]All Rule references are to the Tax Court Rules of Practice and Procedure.

[4]Petitioners agree that the deficiency amounts computed by respondent under Rule 155 are correct.

[5]All section references are to the Internal Revenue Code of 1954 as amended.

[6]Sec. 6213(a) restricts respondent from assessing or collecting the taxes until the decision of the Tax Court has become final. According to sec. 7481, a decision of the Tax Court, if not appealed, becomes final "Upon the expiration of the time allowed for filing a notice of appeal." This is 90 days under sec. 7483. Thus, petitioners are protected from assessment or collection of the taxes during the time between entry of decisions and when they file notices of appeal and the appeal bonds to stay assessment, or for 90 days.

not be used as a vehicle to consider the acceptability of deeds of trust on certain property, we do not at this time reach the merits of petitioners' arguments relative to bonding under section 7485(a)(2).

Rule 155 is the mechanism through which the Court enters a decision for the amounts of deficiency or overpayment resulting from the disposition of issues involved in a case, when these amounts are not readily determinable. *Cloes v. Commissioner*, 79 T.C. 933, 935 (1982).

According to Rule 155(c),[7] argument under this Rule is strictly limited to the correct computation of the deficiency or overpayment, and no consideration will be given to any new issues. This Court has adhered to this Rule in several types of situations. E.g., *Cloes v. Commissioner, supra* (issue related to income averaging where record contained no evidence on which to make computation not considered); *Estate of Papson v. Commissioner*, 74 T.C. 1338 (1980) (refusal to consider issue relating to eligibility of certain U.S. bonds to pay Federal estate taxes); see *Amerada Hess Corp. v. Commissioner*, 65 T.C. 1161 (1976) (entry of decision pursuant to Rule 155 a ministerial duty not to be delayed where no dispute between parties as to computation or form of decision and where appeals court mandate in full force); *Koufman v. Commissioner*, T.C. Memo. 1977–225 (well settled that no new issue will be considered in submitting Rule 155 computations, so the Court refused to consider petitioners' claim for overpayment when not raised earlier in proceedings).

The facts in the case at bar are different from those in other cases we have found relative to the proper subjects for a Rule 155 proceeding. Here, the bond issue petitioners attempt to raise does not involve their tax liabilities at all, but the procedures necessary for petitioners to effect appeals from the Court's decisions.

A party wishing to appeal from a decision of this Court must follow the scheme set out in sections 7482 through 7485 and

---

[7]Rule 155(c) reads as follows:

"Limit on Argument: Any argument under this Rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions or to any new issues. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration."

cases decided thereunder. The first prerequisite to filing an appeal is that a decision of this Court be entered.[8] Another prerequisite for an appealing petitioner, as set forth in section 7485(a)(1),[9] is that, under most circumstances, on or before the time the notice of appeal is filed, petitioner must file a bond in a sum fixed by the Court not to exceed double the amount of the deficiency, with a surety approved by the Court. The purpose of this appeal bond is to insure that petitioner can and will pay any deficiency, plus interest, finally approved by the appellate courts. *Barnes Theatre Ticket Service, Inc. v. Commissioner*, 50 T.C. 28, 29 (1968), affd. 408 F.2d 65 (7th Cir. 1969).

This Court is limited, in exercising its judicial powers, to the consideration of real cases and controversies between adverse parties. *Anthony v. Commissioner*, 66 T.C. 367, 370 (1976). Where a case or issue is not yet ripe for litigation, however, the Court will not issue an opinion. Ripeness determinations require balancing the need for present adjudication against the hardship of withholding review and the conservation of judicial energy.

In the present case, petitioners have filed two memoranda in support of their request and argued their position at a motions session. If petitioners appeal the decisions, they unfortunately may be forced to duplicate some of these efforts. Nevertheless, petitioners' request for a determination that they may offer first deeds of trust in lieu of bond on appeal is premature because decisions have yet to be entered.[10] This Court has no desire to open Rule 155 proceedings to arguments unrelated to the computation of deficiencies or overpayments. To do so

---

[8]See sec. 7483: "*Review of a decision* of the Tax Court shall be obtained by filing a notice of appeal with the clerk of the Tax Court within 90 days *after the decision of the Tax Court is entered.*" (Emphasis added.)

[9]Sec. 7485(a)(1) states in relevant part—

the review under section 7483 shall not operate as a stay of assessment or collection of any portion of the amount of the deficiency determined by the Tax Court unless a notice of appeal in respect of such portion is duly filed by the taxpayer, and then only if the taxpayer—

(1) on or before the time his notice of appeal is filed has filed with the Tax Court a bond in a sum fixed by the Tax Court not exceeding double the amount of the portion of the deficiency in respect of which the notice of appeal is filed, and with surety approved by the Tax Court, conditioned upon the payment of the deficiency as finally determined, together with any interest, additional amounts, or additions to the tax provided for by law * * *

[10]We note that petitioners were directed by an order of this Court dated July 23, 1984, to file, inter alia, a memorandum addressing the relevancy of their request to the Rule 155 proceeding. Their memorandum dealt instead with the merits of their request.

would not only flout settled law (see *Cloes v. Commissioner, supra; Amerada Hess Corp. v. Commissioner, supra; Estate of Stein v. Commissioner,* 40 T.C. 275, 280 (1963); *Bankers Coal Co. v. Burnet,* 287 U.S. 308 (1932)), but also would invite others to argue matters extraneous to the sole purpose of Rule 155 proceedings.

In view of the foregoing, petitioners' objections to entry of decision will not be considered at this time.

*Decisions will be entered in accordance with respondent's computations.*